**BROWN & ROOT, Inc., et al. v. UNITED STATES.**

**Civ. A. No. 4395.**

United States District Court
S. D. Texas, Houston Division.

June 26, 1950.

Vinson, Elkins & Weems, W. B. Browder, Jr., of Houston, Tex., for plaintiffs.

Brian S. Odem, U. S. Atty., and W. G. Winters, Jr., Asst. U. S. Atty., of Houston, Tex., for defendant.

CONNALLY, District Judge.

This action, filed under the Federal Tort Claims Act,[1] seeking recovery of indemnity or contribution by a tort-feasor against the United States (allegedly a joint tort-feasor), presents many interesting questions under that statute and under the laws of this State.

During 1947 Brown & Root, Inc., a large general contracting firm, was engaged in certain road construction at Camp Hood, Texas, a U. S. military reservation, under contract with the U. S. Engineers. A hard surfaced and widely traveled road (referred to in the evidence as the "access road") was open to use, although still under construction. There was no bridge or culvert where the access road crossed a creek or large ditch, and users were obliged to detour and cross the ditch at a point where the sides were less precipitous. Normally the open culvert was marked at night by a barricade (consisting of a 2x4 or 2x6 board affixed to uprights) and by lighted flares. At approximately 11:30 P.M. the night of July 3, 1947, the time of the accident giving rise to the litigation, the flares were not burning, apparently because the fuel was exhausted.

At that time a government pickup truck, occupied by four civilian employees of the U. S. Engineers, was proceeding along the access road. The vehicle was driven by Jesse E. Robinson, with William L. Morgan seated in the cab with him. Thomas J. Rogers and Robert E. Quinn, Jr., were riding in the bed of the truck upon an improvised seat. The road traversed by the vehicle as it approached the barricade was straight, wide, and practically level. The vehicle was being driven at a speed variously estimated at from 35 to 50 miles per hour. The driver, Robinson, had used the road at least a few times within the matter of a day or so prior to the accident, and by reason thereof knew or should have known the location of the detour.

As he approached the barricade, Robinson failed to become aware of the danger in sufficient time to negotiate the turn onto the detour. He lost control of his vehicle, and it overturned. Robinson received very minor injuries; Rogers injuries of some severity; Morgan quite serious injuries; and Quinn was killed.

Thereafter, Morgan, Rogers and the heirs and representatives of Quinn filed separate suits in the State Court against Brown & Root, Inc., to recover for the injuries and death. The Attorney General of the United States was put on notice that these actions were pending and was requested to contribute to their defense, settlement, or disposition. When the United States declined to act, Brown & Root, Inc., through American General Insurance Co., its public liability insurance carrier (the real party in interest here), effected settlements before trial in each of the cases, paying to Rogers $1,250; to Morgan $8,750; to the heirs and representatives of Quinn $13,000. In view of the damages suffered by the various plaintiffs and the probable liability of Brown & Root, Inc., each of such settlements was fair and reasonable.

In this action, plaintiffs Brown & Root, Inc. and American General allege that Robinson, the Government's driver, was guilty of negligence in many particulars; that such negligence of Robinson was the *sole* proximate cause of the accident, and the negligence of Brown & Root, Inc., if any, was not a proximate cause; and they seek *indemnity* (i. e., recovery of their full outlay) of the United States. Alternatively, plaintiffs allege that if Brown & Root, Inc. were guilty of negligence which proximately caused the accident, then such negligence was passive, while that of Robinson was active and affirmative in character, whereby they seek indemnity. In the further alternative, plaintiffs allege that if the negligence of Brown & Root, Inc. and of Rob-

1. Act of Aug. 2, 1946, c. 753, Title IV, 60 Stat. 842, as amended, 28 U.S.C.A. §§ 1346(b), 2671–2680.

inson be of the same character, and each a proximate cause of the accident, then Brown & Root, Inc. and the United States were joint tort-feasors, in which event the plaintiffs seek contribution (recovery of one half of the outlay) of the Government.

At the conclusion of plaintiffs' case, it appeared that American General had paid the entire loss under the terms of its policy of public liability insurance in favor of Brown & Root, Inc., and I sustained the defendant's motion that Brown & Root, Inc. be dismissed as a party plaintiff. Hence the case stands as between these two parties.

At the inception, I am confronted with the motion of the Government to dismiss, based on the proposition that an action for indemnity or contribution does not lie against the Government under the Tort Claims Act.

■ Any number of opinions have been written by the inferior Federal Courts discussing the right to assert a derivative claim against the Government under terms of the Act, with varied and inconsistent results. The Supreme Court has settled the question as to claims arising by subrogation. U. S. v. Aetna Cas. & Sur. Co., 338 U.S. 366, 70 S.Ct. 207. But that does not answer our question as to indemnity or contribution, for these rights—and the principles of law giving rise to them—are quite different from subrogation. The opinion in the Aetna case is devoted not so much to an interpretation of the Tort Claims Act as to the Anti-Assignment Statute, R.S. § 3477, 31 U.S.C.A. § 203, and simply holds that a subrogee, who by operation of law owns an interest in the cause of action in tort of the original plaintiff, may assert it against the Government in his own name. But an action for indemnity between tort-feasors is not an action ex delicto at all. It is based on contract. It is bottomed on the theory of unjust enrichment, and results from a promise, implied in law, that one who is ultimately liable for a wrong will reimburse him who, for other reasons, may also be liable, and who satisfies the obligation. Terminal R. R. Ass'n v. U. S., 8 Cir., 182 F.2d 149;

George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219; 42 C.J.S., "Indemnity", § 20, p. 594.

■ Nor does an action for contribution sound in tort. While not contractual in nature, its origin lies in the ancient doctrine of equity courts, now enforced at law, that those who are jointly liable will share the burden equally. 18 C.J.S., Contribution, § 3, p. 5 et seq.; 10 Tex.Juris., Contribution, p. 539. Judge Medina of the District Court for the Southern District of New York aptly makes the distinction in Niagara Fire Ins. Co. v. U. S., 76 F.Supp. 850, at page 855, with this language: "The right to contribution is an independent right founded upon principles quite different from those upon which the right of subrogation is based. The obligation to respond in contribution arises only after one of several parties equally liable for the same debt pays more than his pro rata share of the common debt. The cause of action does not exist until such a payment is made. But here, by the operation of the doctrine of subrogation, the subrogee becomes the owner of the very rights of the individual who suffered injury to his person or property; they are not similar or analogous but identical." Judge Medina held that an action for subrogation would lie, but cites with approval Oahu Ry. & Land Co. v. U. S., 9 Cir., 73 F.Supp. 707, holding that an action for indemnity or contribution would not. For this or other reasons, the following cases have held that an action for contribution or indemnity does not lie against the Government under the Tort Claims Act. Stradley v. Capital Transit Co., D.C., 87 F.Supp. 94 (contribution); Oahu Ry. Co. v. U. S., supra ("full contribution"); Terminal R.R. Ass'n v. U. S., supra (indemnity).

■ In the appeal of the Stradley case, supra, the Court of Appeals for the District of Columbia Circuit has declined to pass upon the question. Capital Transit Co. v. U. S., C.A.D.C., 183 F.2d 825. In the following, it has been held that such action would lie. U. S. v. Chicago R. I. & P. Ry. Co., 10 Cir., 171 F.2d 377 ("indemnity or subrogation"—the Court does not distinguish between the two; from the opinion

it would appear the action was for indemnity); Howey v. Yellow Cab Co., 3 Cir., 181 F.2d 967 (contribution). These latter opinions appear to be based on the hypothesis that the Act was intended by Congress to put the U. S. on the same footing as an individual defendant in all actions which sound in tort, or which, if derivative, have their derivation from facts consisting of breach of tortious duty; and on the further hypothesis that all such fact situations not specifically provided for in the Act shall be held included, unless specific provision is made for them in the list of exceptions. 28 U.S.C.A. § 2680. The interpretation placed upon the Act by the last cited cases seems inharmonious with established rules of construction of such statutes. U. S. v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L. Ed. 1058, and cases there cited; Hubsch v. U. S., 7 Cir., 174 F.2d 7, and cases there cited. In view, however, of the clear holding by the Third and the apparent holding of the Tenth Circuits, and in the absence of an expression from the Supreme Court or our own Circuit (Fifth), I feel obliged to overrule the motion to dismiss.

Hence we pass to the question as to whether under the facts of this case and the law of this State, such action might be maintained by the plaintiffs against an individual defendant.

■ It is clear, and I find, that Brown & Root, Inc. was negligent in failing to have lighted flares or other adequate warnings around the open culvert. At the trial, counsel for plaintiffs did not seriously contend to the contrary. Likewise, I find that Robinson (driver of the government vehicle) was negligent in failing to have his vehicle under proper control as he approached the barricade. He should have been able to stop or turn aside in safety after the dangerous condition became visible from the rays of his own headlights. The negligence of each was a proximate cause of the accident.

■ As between joint tort-feasors, the common law of this State long recognized the right of *indemnity* as existing in favor of one who satisfies an obligation on which he was liable, but where the actual wrong, or the greater culpability rests on another. Thus, where a landlord is held liable by reason of the dangerous condition of his premises, he may recover indemnity from him who actually created the dangerous condition, Kampmann v. Rothwell, 101 Tex. 535, 109 S.W. 1089, 17 L.R.A., N.S., 758; Y. M. C. A. v. Jasse, Tex.Civ.App., 183 S.W. 867; Westheimer Transfer & Storage Co. v. Houston Bldg. Co., Tex.Civ.App., 198 S.W.2d 465; and a master or principal who, without personal fault, is held liable for acts of his servant or agent, may recover indemnity from them, Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301; Kampmann v. Rothwell, supra; Eastern States Petroleum Co. v. Texas & N. O. Ry. Co., Tex.Civ.App., 114 S.W.2d 408; and conversely, an agent, liable as result of wrong of his principal, may have indemnity from him. Oats v. Dublin Nat'l. Bank, 127 Tex. 2, 90 S.W.2d 824.

The right of indemnity has long been recognized to exist between joint tort-feasors where the negligence of the two was of a different degree of culpability. Many of the older cases have permitted indemnity in favor of one whose negligence was "passive" against the other whose negligence was "active", or in favor of one whose wrong was one of "omission" against the other whose wrong was one of "commission", City of Weatherford Water, Light & Ice Co. v. Veit, Tex.Civ.App., 196 S.W. 986, 993; City of San Antonio v. Talerico, 98 Tex. 151, 81 S.W. 518; and many cases cited in footnote, 10 Tex.Juris., Contribution, p. 554. But this is a most uncertain and unsatisfactory test, made to depend upon the manner of expression rather than the quality of the wrong.[2]

2. As an illustration, I have found Brown & Root, Inc. negligent in *failing* to place lighted flares or adequate warnings, expressing an act of omission. The finding might as well have been of negligence in placing an inadequately lighted barricade across the road; and the *failure* of Robinson to have his car under control might as well have been expressed by a finding of driving at too fast a rate or under circumstances where he could not control his vehicle.

■ In three recent cases,[3] the Supreme Court of Texas seems to have laid aside the "passive" versus "active" negligence test, and announced the rule that indemnity between tort-feasors lies only *where one tort-feasor breaches a duty which he owes to the other* (as distinguished from the breach of duty which each has committed as to the plaintiff).[4]

■ Applying this test, I conclude that Brown & Root, Inc. (or, more accurately, their insurer) is not entitled to indemnity from the Government. The unfortunate accident resulted from no breach of duty owed by Robinson or the United States to Brown & Root, Inc. The duty to drive carefully and to have his vehicle under proper control was one owing only to the passengers or to others upon the highway whose safety or property might be endangered by its violation.

If there is a difference in the quality of the negligence of Brown & Root, Inc. and Robinson (an additional consideration laid down in Wheeler v. Glazer, supra), I conclude that the negligence of Brown & Root, Inc. was the more culpable. In this age of good roads and fast cars, permitting an open culvert to remain without lights of any kind and with a flimsy barricade is more fraught with danger than driving even at the maximum estimate of Robinson's speed.

■ It is generally stated that the common law of this State does not permit of *contribution* between joint tort-feasors. 10 Tex.Juris., Contribution, p. 552, and cases there cited; 18 C.J.S., Contribution, § 11, p. 14, and cases there cited. As some exceptions to this general statement are found in the earlier cases (arising, I think, from a confusion between indemnity and contribution), it would be more accurate to state that the common law permitted no contribution between joint tort-feasors whose negligence was of the same quality and degree of culpability. Wheeler v. Glazer, supra.

■ Article 2212 of the Revised Civil Statutes of this State, enacted in 1917, set out in full in the footnote,[5] modified this rule to some extent. Wheeler v. Glazer, supra. From the clear language of the statute, I think it obvious that the Legislature intended to relax the stringency of the common law rule in those cases where neither the common law nor other statute provided for distribution of the loss, and where (1) the plaintiff sued more than one tort-feasor, (2) recovered judgment against more than one, and (3) one of such defendants was obliged to pay the entire judgment. In such case, where all defendants were before the court, and each had equal right to defend, the one defendant who, through the option or capricious choice of

---

3. Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 140 A.L.R. 1301; Austin Road Co. v. Pope, 147 Tex. 430, 216 S. W.2d 563; Humble Oil & Ref. Co. v. Martin, Tex.Sup., 222 S.W.2d 995.

4. "Where the injury forming the basis for the judgment against the joint tort-feasors results from a violation of a duty which one of the tort-feasors owes to the other, the latter, at common law, is entitled to contribution or indemnity from the former." Citing a number of authorities, Wheeler v. Glazer, supra, 137 Tex. 341, 153 S.W.2d 452.

   A most complete and helpful discussion of the Texas cases is found in an article by Professor Hodges of the University of Texas Law School, 26 Tex.L.Rev. 150.

5. "Any person against whom, with one or more others, a judgment is rendered in

any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency. Acts 1917, p. 360."

264

the plaintiff, was compelled to pay, might recover his pro rata share of the loss from each of the remaining solvent defendants. But the cases have extended the doctrine beyond the words of the statute. If the plaintiff sues only one defendant, such defendant may implead the others. Lottman v. Cuilla, Tex.Com.App., 228 S.W. 123. The Texas Supreme Court has gone further, and stated that the second defendant need not be a party to the original suit. The defendant who is held in judgment there may, *in a separate action,* pursue and recover contribution from his joint wrongdoer. Union Bus Lines v. Byrd, 142 Tex. 257, 177 S.W.2d 774. Thus, had there been a *judgment* rendered against Brown & Root, Inc. after a contested trial, that defendant might in this independent action seek contribution from the Government under the terms of the Texas statute. But such was not the case. In each instance after the three cases were filed in the State Court, a voluntary settlement agreement was entered. Neither the liability of Brown & Root, Inc. nor the damages sustained by the various plaintiffs was determined by any Court. Brown & Root, Inc. simply purchased its peace. Article 2212 makes no provision for recovery by one *alleged* to be liable to the plaintiff against his alleged joint tort-feasor under such circumstances. Cases cited above show such recovery is not recognized on common law principles.[6] To permit recovery of contribution under these circumstances would extend the meaning of Article 2212 far beyond its terms and beyond the interpretation placed upon it by the Texas Courts, 10 Tex.Juris., Contribution, p. 544. I am not inclined to do further violence to the terms of the statute. If it is desirable that contribution be permitted under such circumstances, the Legislature should so provide. Baylor University v. Bradshaw, Tex.Civ. App., 52 S.W.2d 1094 at page 1103, affirmed, Tex.Com.App., 84 S.W.2d 703.

As holding to the contrary and as permitting recovery of contribution in cases of

voluntary settlement, the Plaintiffs cite two opinions of the Courts of Civil Appeals of Texas, Wm. Cameron & Co., Inc. v. Thompson, 175 S.W.2d 307, and Westheimer Transfer & Storage Co., Inc. v. Houston Bldg. Co., Inc., 198 S.W.2d 465. Neither opinion supports plaintiffs' contention. In the Cameron & Co. case, the Railroad Company settled with its injured employee and sued Cameron & Co. to recover indemnity or contribution. Recovery is denied on a holding by the Court that Cameron & Co. was not negligent. But the action was based on a *contractual* obligation to divide the loss in case of negligence by both parties, and the question of recovery of indemnity or contribution under common law principles or under terms of the statute was not raised or discussed. In the Westheimer case, recovery of indemnity is permitted not on the theory that the parties were joint tort-feasors, but on the theory that the original defendant, being liable for breach of a non-delegable duty, might recover from the second defendant who alone was at fault. The question of the propriety of the settlement, and the amount thereof, was covered by an agreement between the parties; and the question as to the payment being voluntary rather than enforced was not raised. The opinion neither discusses nor cites Article 2212.

The plaintiffs point out that in the Quinn case a trial was had and judgment entered. Actually, the parties agreed upon a settlement. Because minors were involved, effective releases could not be secured, and the settlement was submitted to the Court for approval, and for distribution of the amount of recovery among the parties plaintiff. A consent decree was entered. The parties may have gone through the motions, but no trial was had nor judgment entered in the statutory sense. Recovery of contribution is not warranted either upon common law principles or by the Texas statute under these circumstances.

■ The Government advances other defenses of some merit, which warrant dis-

6. To the cases cited above the opinions in Gattegno v. The Parisian, Tex.Com. App., 53 S.W.2d 1005; and Kimbriel Pro-

duce Co. v. Mayo, Tex.Civ.App., 180 S. W.2d 504, might be added.

cussion. It urges the proposition that any defense which it would have in a suit against the Government by the original plaintiffs may be availed of here. This is a correct statement of the Texas law. Brown & Root, Inc. asserts a derivative right, which cannot rise above its source. Unless the Government be liable to the original plaintiffs, Brown & Root, Inc. has conferred no benefit on the Government by paying the obligation; there would be no unjust enrichment, and the law would raise no implied promise to repay; nor would the equitable doctrine that those jointly liable should share the loss equally arise. West Texas Utilities Co. v. Renner, Tex. Com.App., 53 S.W.2d 451; Baltimore Transit Co. v. State to Use of Schriefer, 183 Md. 674, 39 A.2d 858, 156 A.L.R. 460; Terminal R. R. Assoc. v. U. S., supra; Oahu Ry. Co. v. U. S., supra, 18 C.J.S., Contribution, § 3, p. 4 et seq.

First, the Government urges that Morgan, Rogers and Quinn, as civilian employees of the Government, were eligible for compensation benefits under the U. S. Employees' Compensation Act, 5 U.S.C.A. § 751 et seq.; and that they or their beneficiaries have pursued this remedy, and could not maintain an inconsistent action against the Government. Since enactment of the Federal Tort Claims Act, an injured employee has an election to proceed under the Compensation Act or against the Government in tort. When he has elected, he is bound, and cannot pursue the other remedy. Dahn v. Davis, 258 U.S. 421, 42 S.Ct. 320, 66 L.Ed. 696; Parr v. U. S., 10 Cir., 172 F.2d 462.

In the case of Morgan, the evidence shows that he filed "Claim for Compensation on Account of Injury" on July 26, 1947, upon a form furnished by the Government for that purpose. Morgan completed and filed numerous other forms required by the Bureau of Employees' Compensation. Periodic payments were made to him totaling $995.50. Pursuant to the statute, 5 U.S.C.A. § 777, at the time of his settlement with Brown & Root, Inc., this amount, together with some $2,500 for hospitalization and treatment furnished him, was deducted and retained by the Government. The amount of $2,239.09 out of his recovery from Brown & Root, Inc. was received by Morgan, but credited against future compensation benefits which might become payable to him. Under Parr v. U. S., supra, these facts would constitute a valid defense to any action in tort which Morgan might file against the Government, and to that extent would constitute a defense to this action.

In the case of Rogers, "Employee's Notice of Injury or Occupational Disease" was filed July 4, 1947, upon a form furnished for this purpose. Among other things, this "notice" recites: "I hereby make claim for compensation and medical treatment to which I may be entitled by reason of the injuries sustained by me." Rogers does not appear to have filed a "Claim for Compensation on Account of Injury", as did Morgan. Many periodic reports requesting additional treatment were filed on his behalf. No compensation was paid directly to Rogers, but certain hospitalization, treatment and services were furnished him. At the time of his settlement with Brown & Root, Inc., the amount of these payments was refunded to the Government, and the amount of $598.62 credited against future payments of compensation.

The plaintiffs contend that Rogers, having filed no "Claim for Compensation" and having personally received no compensation payments, did not elect. I cannot agree. It is evident that his case was considered as compensable by all parties. At the time of settlement with Brown & Root, Inc., he made no objection to deduction from his portion the amount paid for medical services on his behalf, nor to credit of the amount of $598.62 upon future payments of compensation to which he might become entitled. In the event of further disability by Rogers, no doubt the Bureau will be obliged to make additional payments, and I think he would be barred by his election if he asserted a tort claim against the Government now.

Robert E. Quinn, Jr. was survived by his mother, Bessie E. Quinn; his widow,

Mrs. Robert E. Quinn, Jr.; and a minor child by a prior marriage, Linda Ruth Quinn, who was represented by her mother and guardian, Mary A. Whitacre. Bessie E. Quinn filed "Claim for Compensation on Account of Death" July 25, 1947, with certain supporting affidavits, upon forms provided. She was advised by the Bureau of Employees' Compensation that the data which she had furnished was insufficient and that further information was required. Mrs. Quinn failed for a long period of time to furnish the required information (settlement with Brown & Root, Inc. having intervened), and finally on December 16, 1949, Mrs. Quinn was advised by the Bureau in part as follows:

"On November 14, 1947 and on February 9, 1949, you were requested to submit evidence in support of your claim, and have failed to comply with such request, and have not forwarded the evidence to this Bureau.

"Accordingly, your case has been closed."

An almost identical chain of events transpired in connection with the claim filed for the minor, Linda Ruth Quinn. Insufficient data having been filed in support of the claim, this was called to Mrs. Whitacre's attention. On December 16, 1949, she was advised that her case had been closed. No payments of compensation or expense were made on account of the death of Quinn.

■ I agree with plaintiffs that the mere filing of the claim, followed by abandonment without the claim having been perfected, and without payment either of compensation or expense by the Bureau, would not constitute an election by the Quinn heirs.

■ The Government urges as an additional defense here that, to any suit against it by the original plaintiffs, the old common law defense of the fellow-servant rule would be available, whereby a master may not be held liable for injury to his servant flowing from the negligence of a fellow servant. Counsel have cited no authority directly holding that, under the Tort Claims Act, the Government might avail itself of this defense if sued by its own employee. My own investigation has revealed none. However, the defense is available to a state or municipal government. 56 C.J.S., Master and Servant, § 322, p. 1081. In U. S. v. Campbell, 172 F.2d 500, 503, and Hubsch v. U. S., 174 F.2d 7, the Court of Appeals for the 5th Circuit holds specifically that the liability of the Government under the Act is based on the doctrine of respondeat superior, "in the same manner and to the same extent as the liability of private persons under that doctrine were measured and limited in the various states". In Jefferson v. U. S., D.C., 77 F.Supp. 706, affirmed, 4 Cir., 178 F.2d 518, in a suit by a soldier under the Act to recover for the negligence of a medical officer who, in performing an operation upon him, permitted a towel to remain in the plaintiff's abdomen, the fellow-servant doctrine is mentioned as an available defense, but held not applicable under the facts there because the plaintiff and the medical officer were not fellow servants. On these authorities, I conclude that such defense is available to the Government to the same extent as it would be to a private employer under the laws of this State.

■ The doctrine of the fellow-servant rule is recognized and applied in this State, except in those instances where modified by the Workmen's Compensation Act, Vernon's Ann.Civ.St.Tex. art. 8306 et seq., or other statutes not applicable here. 29 Tex.Juris. 72. Counsel for the plaintiffs does not contend to the contrary, but argues that the driver, Robinson, was a vice principal, and as such his negligence is that of the master, and the defense is unavailing. The evidence shows that Rogers, Quinn and Morgan were "inspectors"; Robinson was "supervisor" and was in charge of the inspection during the "swing shift" and directed Rogers, Quinn and Morgan as to the work which they were to inspect. He was to that extent their superior, but his relation with them was not such as to make

him a vice-principal. Lantry-Sharpe Contracting Co. v. McCracken, 105 Tex. 407, 150 S.W. 1156, 1161;[7] 29 Tex.Juris. 766. The original plaintiffs thus could not recover against the Government for their injuries based on the negligence of Robinson, and similarly the plaintiffs here cannot recover for the same reason. The plaintiffs contend that the defense of fellow servant was not plead by the defendant and hence was waived. But the United States Attorney has no authority to waive such a defense in this action. Munro v. U. S., 303 U.S. 36, 58 S.Ct. 421, 82 L.Ed. 633; Anderegg v. U. S., 4 Cir., 171 F.2d 127; Rodinciuc v. U. S., 3 Cir., 175 F.2d 479.

As a final defense, the Government disputes the right of American General to assert the cause of action as subrogee. As stated, its liability arose from the terms of its policy of public liability insurance with Brown & Root, Inc. While the opinion in U. S. v. Aetna Cas. & Sur. Co., supra, does not deal directly with subrogees under policies of public liability insurance, I think nevertheless that it settles the law adversely to the defendant's contention. American General defended and settled the State Court cases as it was required to do by the terms of its policy, in the name of and on behalf of Brown & Root, Inc., and by operation of law thereafter stood in the shoes of its assured for the purpose of the assertion of any rights which resulted from such defense and settlement.

For the reasons stated, it follows that the plaintiffs are not entitled to recover. The foregoing is adopted as findings of fact and conclusions of law. Counsel for the Government will present decree in harmony herewith.

7. In the course of its opinion, the Supreme Court states: " * * * if such agent does not possess the authority to employ and discharge the hands under his control, he cannot, under the law of this state, be regarded as anything more than a fellow servant with his coemployés notwithstanding his authority to control and direct those under him. The position of boss or foreman or superintendent, in the absence of such other authority, will not constitute such agent a vice principal."