**NEWPORT NEWS SHIPBUILDING & DRYDOCK COMPANY, a corporation, Appellant,**

v.

**UNITED STATES of America, as owner of THE Steamship P & T PATHFINDER, ex USS Du Page and otherwise known as USMC Hull No. 389, Appellee.**

No. 6997.

United States Court of Appeals Fourth Circuit.

Argued June 21, 1955.

Decided Sept. 17, 1955.

William McL. Ferguson, Newport News, Va. (Harry H. Holt, Jr., Hampton, Va., and J. Warren Stephens, Newport News, Va., on brief), for appellant.

Edward R. Baird, Norfolk, Va. (L. S. Parsons, Jr., U. S. Atty., John M. Hollis, Asst. U. S. Atty., Norfolk, Va., Kirlin, Campbell & Keating; Eugene F. Gilligan; Edward L. Smith, New York City, and Baird, White & Lanning, Norfolk, Va., on brief), for appellee.

Manning, Harnisch, Hollinger & Shea, New York City (Joseph M. Glickstein, Jacksonville, Fla., Edwin A. Lewis and William Hughes Mulligan, New York City, on brief), for New York Shipbuilding Corp., amicus curiae.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in a suit by the United States, as owner of a vessel, to recover the sum of $14,691.53 as indemnity from a shipyard for claims paid cargo owners for damages to cargo. The right to indemnity was claimed because the shipyard, in work done on the vessel, had failed to comply with the plans and specifications with respect to "blanking off" a waste line near the water line of the vessel, with the result that water entered and inflicted damage on the cargo, for which the United States was required to respond to cargo owners under its warranty of seaworthiness. Counsel for the shipyard having stated on the trial that the failure to "blank off" the pipe was inadvertent, the trial judge found that this constituted negligence as well as breach of contract on part of the shipyard and entered a decree for the amount of the indemnity claimed with interest and costs 130 F.Supp. 159. The shipyard has appealed, claiming that its liability under its contract is limited to the cost of repairing the defect and that this has been paid and accepted by the United States in discharge of the liability. The facts out of which the liability is claimed to arise were correctly and succinctly stated by the trial judge as follows:

"Following the termination of World War II the libellant sought to reconvert certain troop ships into cargo vessels. The respondent was awarded the contract for the Pathfinder, as well as three other vessels. Delivery for the purpose of reconversion was on December 13, 1946, for completion within 90 days. The time limit was subsequently extended by agreement and no delay is involved herein. In accordance with the plans and specifications, respondent became obligated to remove and "blank-off" a 1¼ inch waste line on the starboard side of the vessel. Respondent, in the course of reconversion, removed the 1¼ inch waste pipe, but failed to seal the line or "blank-off" the same by the insertion of a flange or welded insert. There were apparently between 150 and 200 similar pipes

to be "blanked-off" on this particular job. While respondent denies any negligence or failure to complete the contract as per the plans and specifications, it admits that it has no evidence to contradict libellant's evidence as revealed by the stipulation, and further concedes that it has no affirmative evidence indicating any tampering with the line or pipe following delivery by respondent to libellant on May 5, 1947. The Court therefore finds that the respondent failed to complete the contract as per the plans and specification, and was negligent in such failure."

The article of the contract upon which the shipyard relies for exemption from liability for the damage sustained is as follows:

"Article 19: *Guaranty Period.* (a) If at any time within 6 months after the acceptance of the vessel by the Commission, any weakness, deficiency, defect, failure, breaking down, or deterioration in material or workmanship furnished by the Contractor hereunder, other than that due to ordinary wear and tear, or the negligence or other improper act of the Commission (including any purchaser or charterer of the vessel during said six month period) shall appear or be discovered, such defective workmanship or material shall, at the Contractor's expense, be made good to the satisfaction of the Commission. However, the liability of the Contractor hereunder shall not extend beyond the actual repair or replacement of such defective materials or workmanship, nor shall the Contractor be liable for consequential damages, except that in the event any defect in any item of machinery or equipment purchased and installed by the Contractor causes any damage to such item of machinery or equipment, the Contractor shall be liable not only for the cost of correcting or repairing such defect but also for the cost of correcting or repairing any damage to such item of machinery caused by such defect. Any such work required to be done shall be carried out if practicable, and at the Commission's option, at the Shipyard. The Commission may, however, have such work carried out at any port in the United States, and in that event, the Contractor shall be liable for the expense thereof at the prevailing local commercial rates, including cost of dockage of the vessel if necessary. Should the Contractor so desire, it may have an engineer on board at any time during said six month period, who shall have full opportunity to observe and inspect the working of the vessel in all of its parts, but without any directing or controlling power over the same. In computing said period of six months from the date of acceptance, the time, if any, but only such time, shall be excluded during which the vessel is not available for service on account of any weakness, deficiency, defect, failure, breaking down or deterioration of the work covered hereby for which the Contractor is responsible as herein provided.

"(b) The Commission shall notify the Contractor as promptly as practicable of all defects and deficiencies discovered during said guarantee period for which it is held responsible, in order that the Contractor shall have an opportunity to exercise and enforce such rights and remedies as it may have against persons who have furnished items of material or equipment for the vessel."

The cost of making the repairs on the waste line was $27.00 and the shipyard duly paid this when bill therefor was presented to it by the charterer of the vessel along with other items of repairs on chartered vessels which had been reconverted by it. Thereafter the Chief

of the Inspection and Performance Division of the Maritime Commission wrote the shipyard that it had no further "guarantee liability" with respect to these vessels. At the time the item of $27.00 was included in the repair bill presented the shipyard, reference was made to the fact that the defect had resulted in cargo damage, but no claim was made therefor at that time and there was no suggestion that this was considered in the payment of the item.

We think it perfectly clear on these facts that the trial judge correctly held, not only that there was breach of contract with respect to the failure to blank off the waste pipe, but also that this constituted negligence which was the direct cause of the damage to cargo and the loss for which plaintiff is seeking indemnity. The shipyard claims that negligence was not pleaded, but the facts were pleaded and they unquestionably establish negligence in the respect found. If the pleadings were not sufficient to allege negligence, we would permit an amendment, but we do not think that necessary. We think, too, that the trial judge correctly held the damage which resulted from the negligence to be direct and not consequential, and this whether the claim be regarded in contract or in tort. The failure to blank off the waste line was equivalent to leaving a hole in the skin of the ship near the water line; and, as the ship was being reconverted into a cargo carrier, the natural, reasonable and probable consequence of this failure was to admit water which would damage cargo as soon as the ship embarked upon a voyage and encountered heavy seas. There can be no question but that the reasonable and probable, if not inevitable, result of the failure would be serious damage to almost any kind of merchandise stowed in that part of the vessel. See Bethlehem Shipbuilding Corp. v. Joseph Gutradt Co., 9 Cir., 10 F.2d 769; United States v. Bethlehem Shipbuilding Corp., D.C., 25 F.2d 157. Certainly such damages were reasonably within the contemplation of the parties to the contract and were the natural and probable consequences of the negligent failure to comply with it. Whether denominated "direct" or "consequential", we think that they were clearly recoverable either on the basis of contract or of tort.

We do not deem it necessary to go into the question as to whether the United States would be entitled to recover by way of indemnity the damages which it had been required to pay the cargo owner under its warranty of seaworthiness, if it were precluded from recovery of damages by the article of the contract upon which the shipyard relies; for we do not think that the effect of that article is to preclude recovery of damages for breach of contract or negligence in its performance. That article which is article 19, quoted above, is entitled "Guaranty Period", and does not undertake to limit the liability of the shipyard for negligence or for breach of contract. There is such limitation of liability for negligent damage or loss to the vessel while in possession of the shipyard in article 26, entitled "Insurance", which limits the liability of the shipyard to $300,000 and requires it to carry insurance in that amount to cover such liability. Article 19 was inserted to give a guaranty of materials and workmanship for a period of six months after delivery with an undertaking to make good defective workmanship or materials to the satisfaction of the Maritime Commission. The limitations upon which the shipyard relies were limitations upon the liability under the guaranty thus undertaken, the word "hereunder" in the second sentence of the article manifestly having reference to the article, and not to the contract as a whole, and the subsequent language manifestly referring to the repair work which the shipyard undertakes by the article to perform. It should be noted, also, that section (b) of article 19 shows clearly that the article was intended to apply only to the guaranty to make good deficiencies in

material and workmanship, in requiring prompt notice from the Commission so that the shipyard might enforce rights and remedies against those who had furnished items of material or equipment.

That article 19 will not reasonably bear the interpretation which the shipyard attempts to place upon it, appears not only from the language of the article itself but also from a consideration of the general purpose of the contract and its other provisions. We have already adverted to the general limitation of liability in article 26. Article 27 provides for the giving of a performance bond in the sum of $142,000 and a payment bond to cover labor and materials in the sum of $284,000. The performance bond was "to indemnify and save harmless the United States, the Commission, and every other agency or instrumentality of the United States from and against any and all *claims,* charges, liens, and encumbrances, on or against the vessel and the materials, supplies, or equipment furnished or installed therein, existing on the date of delivery and acceptance of the vessel by the Commission, *or thereafter arising* or in any manner growing out of the reconversion of the vessel, and resulting from any act or omission of the contractor, * * *." (Italics supplied.) There would have been no reason for the breadth of coverage here required, if there was to be no liability on the part of the shipyard after delivery of the vessel except for repair of defective materials and workmanship.

■ The contract related to the reconversion of a vessel which was to be used as a carrier of cargo. The parties knew that for negligence resulting in unseaworthiness there would be liability to cargo owners on the part of the owners of the vessel; and it is not reasonable to suppose that it was intended that the shipyard would be exempted from negligence that would subject the owners to liability. In addition to this, we think there can be no question but that the shipyard was liable to cargo owners for negligence in the repair of the vessel resulting in damage to cargo,[1] and it is hardly reasonable to assume that it was intended that liability to the owner of the vessel for such negligence should be limited, leaving unaffected the liability to cargo owners which could be utilized in such way as virtually to nullify the limitation upon the liability to the owner.

■■ Having reached the conclusion that article 19 has no application to the liability here, we need not consider the question as to whether, if construed to be applicable, the limitation of liability therein contained would not be invalid as to damages caused by negligence such as was here involved because contrary to public policy. Cf. Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629. Whether, in the light of a sound public policy, shipyards may be permitted to exempt themselves by contract from liability for negligence in the repair of a vessel rendering it unseaworthy, is an interesting question which we need not here decide; but the fact that such question would necessarily arise upon the interpretation of the contract for which the shipyard contends, is an additional reason for avoiding any such interpretation. Not only is the rule well settled that contracts providing exemption from liability for negligence should be strictly construed;[2] but it is also well settled that a construction which would render

1. That there was liability on the part of the shipyard to cargo owners who might suffer loss from its negligence in making repairs, see Sieracki v. Seas Shipping Co., 3 Cir., 149 F.2d 98; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099; General Motors. Corp. v. Johnson, 4 Cir., 137 F.2d 320; Pierce v. Ford Motor Co., 4 Cir.,

190 F.2d 910, certiorari denied 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666; Ford Motor Co. v. Mahone, 4 Cir., 205 F.2d 267; MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696; A.L.I. Restatement of Torts. sec. 414.

2. 38 Am.Jur. p. 649; Crew v. Bradstreet Co., 134 Pa. 161, 19 A. 500, 7 L.R.A.

the provision of a contract of doubtful validity is to be avoided, if another reasonable construction can be placed upon it.[3]

In summary, on the principal point in the case, we think it clear that the case here is governed by the decision in Bethlehem Shipbuilding Co. v. Joseph Gutradt Co., supra, 9 Cir., 10 F.2d 769, and the cases therein cited. The United States as owner of the vessel was liable under its warranty of seaworthiness to the cargo owners who suffered damage as the result of the negligent failure of the shipyard to blank off the waste line. Having satisfied this claim of the cargo owners, and the reasonableness of the amount paid in settlement having been stipulated, the United States is entitled to be indemnified for that amount or to recover it as an element of damage from the shipyard because of its negligent breach of contract. The article in the contract relied upon by the shipyard to exempt it from liability for the damages, has nothing to do with the case.

Other questions raised on the appeal may be disposed of briefly. The shipyard contends that the acceptance of the $27 for repairs and the correspondence connected therewith operated as a settlement or as an estoppel against the United States. It is clear, however, that this amount was not paid or tendered in settlement of any claim for damage to cargo, which had not been asserted, but in settlement of the liability under the guaranty of article 19 to make repairs. As to the statement in the letter of the Chief Inspector of the Maritime Commission, we agree with the trial judge that "it would be absurd to exonerate respondent from a cargo loss caused by water damage on the basis of a statement that 'guarantee liability' had ceased." The contention that the shipyard was discharged from liability for its negligence because of the right given the owner by the contract to inspect the vessel is so lacking in merit as not to warrant discussion. And the same is true of the contention that the shipyard was not given notice of the cargo claims with opportunity to contest their payment.

As to the question of interest, we think it clear that there was no error in allowing interest on the amounts paid the cargo owners from the dates of payment. In admiralty the allowance of interest is discretionary. The Cabo Villano, 2 Cir., 18 F.2d 220. It is awarded where necessary to place the injured party in the position which he would have occupied if the party in default had fulfilled his duty in the premises. Railroad Credit Corp. v. Hawkins, 4 Cir., 80 F.2d 818, 825–826 and cases there cited. Here it was clearly proper to award interest on the payments of damages made by the shipowner under its liability for seaworthiness where primary liability for such damages rested with the shipyard because of its negligence.

Affirmed.

661, 19 Am.St.Rep. 681; Southern R. Co. v. Coca Cola Bottling Co., 4 Cir., 145 F.2d 304, 307; Opinion of Mr. Justice Frankfurter in Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 123–124, 75 S.Ct. 649; note 175 A.L.R. at page 18.

3. 12 Am.Jur. 793; Ewing v. Howard, 7 Wall. 499, 506, 19 L.Ed. 293; Dundas v. Hitchcock, 12 How. 256, 269, 13 L.Ed. 978.