Peter F. DAMANTI, Plaintiff,

v.

A/S INGER, Defendant and Third-Party Plaintiff,

Daniels & Kennedy, Inc., and Illinois Atlantic Corp., Third-Party Defendants.

Civ. No. 16435.

United States District Court
E. D. New York.

June 27, 1957.

Pyne, Brush, Smith & Michelsen, New York City, for third-party plaintiff, Monroe J. Cahn, Joseph M. Brush, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for third-party defendant, Illinois Atlantic Corp., David P. H. Watson, New York City, of counsel.

Charles G. Tierney, New York City, for third-party defendant, Daniels & Kennedy, Inc.

BRUCHHAUSEN, District Judge.

Defendant and third-party plaintiff, A/S Inger, the shipowner, moves for various forms of relief under Rules 50, 49, 58 and 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Immediately prior to the time for making summations to the jury in the original action herein, the shipowner settled with the plaintiff stevedore, after inviting impleaded third-party defendants, Illinois Atlantic Corporation, the time charterer and Daniels & Kennedy, Inc., the stevedore, to take over the shipowner's defense.

Additional testimony was given by the shipowner's attorney as to the reason for the settlement of the plaintiff's action. Thereupon the causes of action for indemnity were submitted to the jury upon special interrogatories, a copy of which, with the answers, is annexed.

■ The cases hold that settlement with a plaintiff does not preclude recovery by the settling indemnitee, who is a passive wrongdoer, against a primarily liable indemnitor, Chicago, Rock Island & Pacific Ry. Co. v. United States, 7 Cir., 220 F.2d 939; Chicago, Rock Island & Pacific Ry. Co. v. Dobry Flour Mills, 10 Cir., 211 F.2d 785; Garrity v. Bartolomeo, 2 Cir., 149 F.2d 604; Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 67 N.E. 439; Cf. American President Lines v. Marine Terminals Corp., 9 Cir., 234 F.2d 753; Cf. Newport News Shipbuilding & Dry Dock Co. v. United States, 4 Cir., 226 F.2d 137; Cf. also, Cardinal v. State, 304 N.Y. 400, 107 N.E. 2d 569.

■ It has been held that a party undertaking to settle a claim must prove that he was liable, that the settlement was reasonable, and that he and the party from whom he seeks indemnity were not joint tort-feasors in pari delicto, but that his negligence was passive and secondary, while that of the party from whom indemnity is claimed was primary, active and affirmative. The Toledo, 2 Cir., 122 F.2d 255; Donald v. Guy, D.C.Va., 127 F. 228.

However, there is a distinction between liability in law and liability in fact. The litigant who could correctly determine the latter, whether or not the trial be before a jury, would be clairvoyant.

It seems unlikely that the same degee of liability in fact on the part of the indemnitee must be established as would have been established by the plaintiff against the said indemnitee, for the law favors settlements, and if such original liability had to be so clear cut, settlements could rarely, if ever, be made. The result would be that only jury verdicts would establish the right to indemnity, and indemnitors, if they were advised of the original lawsuit and given a reasonable opportunity to defend, would be bound by the findings implicit in the original judgment, i. e., liability and damages. Standard Oil Co. v. Robbins Dry Dock & Repair Co., 2 Cir., 32 F.2d 182; New York & Porto Rico S. S. Co., of New York v. Lee's Lighters, D.C.E.D.N.Y., 48 F.2d 372; Crawford v. Pope & Talbot, Inc., 3 Cir., 206 F.2d 784.

■ As pointed out in Whitmarsh v. Durastone Co., D.C.R.I., 122 F.Supp. 806, 810:

> "The voluntary payment or submission to judgment by a person who thereafter seeks indemnity from the actual wrongdoer does not defeat his right to recovery. It merely varies the degree of proof required to establish the liability of the person from whom such indemnity is sought."

In Fein v. Bonetti, Sup., 111 N.Y.S. 2d 840, affirmed 282 App.Div. 868, 125 N.Y.S.2d 1; reversed on other grounds 307 N.Y. 682, 120 N.E.2d 854, an effort was made by the indemnitor to bind the indemnitee by the testimony against it of the plaintiff in the original action. In its decision, the trial Court said, 111 N.Y.S.2d 840, 844:

> "Certainly the judgment against plaintiff after the first trial does not preclude the claim here, it not being clear as to just upon what

elements the verdict for Mrs. Fein was found."

In Chicago, Rock Island & Pacific Ry. Co. v. United States, 7 Cir., 220 F.2d 939, 941, something of a similar nature arose. The trial Court found that both the original claimant and the indemnitee-plaintiff were "in the exercise of due care and caution in their behalf." The Court rejected the argument that such absence of liability on the indemnitee's part precluded recovery in the indemnity action by the following language, placing such a finding in its proper perspective, at page 941:

"It does not follow from the finding here that plaintiff and its employee 'were in the exercise of due care and caution in their behalf' that a similar finding would have been made by the triers of fact in an action by the employee against the plaintiff. Plaintiff at the time it made settlement with the employee did not have the benefit of such a finding. It was required at that time to use its foresight rather than its hindsight in evaluating the situation relative to its probable liability. Taking into consideration that which we all know, that is the almost insurmountable difficulties attending the defense by a railroad in an action for damages under the Federal Employers' Liability Act, [45 U.S.C.A. § 51 et seq.], it cannot be said that plaintiff made other than a fair and reasonable settlement of its potential liability. To have resisted settlement to the point of a jury verdict would have been sheer folly under the circumstances."

The rule as to the finality of the adjudication of the original claim is clearly stated in Crawford v. Pope & Talbot, Inc., supra, 206 F.2d at page 795:

"If the indemnitor was not a party to the original action against the indemnitee, and where he was under no duty to participate in the defense of the original action, or where, being under such a duty, he was not given reasonable notice of the action and requested to defend, neither the indemnitor nor the indemnitee is bound in subsequent litigation between them by findings made in the action. Where, on the other hand, the indemnitee and the indemnitor are co-defendants actively participating in the defense of the original action, or where the indemnitor, with notice of the action and of the indemnitee's request that he defend it, does not participate in the defense but leaves it to the reasonable efforts of the indemnitee, then in subsequent litigation between them both indemnitor and indemnitee are bound by the findings necessary to the judgment in the action."

Perhaps it would not be accurate to substitute the word "settlement" for "judgment" in the above quoted paragraph, but at the same time it would seem improper to go to the other extreme and say that the settling indemnitee, before he could recover, must place himself in the original claimant's shoes and prove claimant's case against himself to the same degree and with the same vigor as would have been incumbent upon the original claimant. The result would be that settlements would be fewer and indemnity claims larger.

Perhaps there may be a distinction between the readiness with which an indemnitee may settle when the basis of his indemnity claim is upon an express agreement to indemnify, Chicago, Rock Island & Pacific Ry. Co. v. Dobry Flour Mills, supra, or upon an agreement to indemnify, implied in fact, Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, as opposed to a quasi-contractual agreement to indemnify, referred to as an agreement implied in law, Chicago, Rock Island & Pacific Ry. Co. v. United States, supra.

In the first two instances the indemnitor has taken it upon himself either by express verbiage, or verbiage reasonably to be implied from express verbiage,

that he will stand behind any loss that the indemnitee has suffered. In the latter instance the agreement to indemnify is imposed by law upon the indemnitor, irrespective of, and often in violation of, his intention. Gallant v. Waterman S. S. Corp., D.C.S.D.N.Y., 90 F.Supp. 495. Cf. Hill v. Waxberg, 9 Cir., 237 F.2d 936 for the distinction between contracts implied in fact and contracts implied in law.

The impleaded defendants in this action left the shipowner indemnitee with almost the whole burden of defeating the original claim. It was the shipowner who attempted to prove claimant's contributory liability, exaggeration of injuries, and absence of any breach of duty to the said claimant, so that if the $30,000 paid in settlement of the case was less than what a jury would have awarded, the shipowner alone deserves the credit.

If the impleaded indemnitors made vigorous objection to settlement with the claimant, it was not in complete keeping with any vigorous effort to defeat the claim originally.

If there is such a distinction between voluntary settlement of a claim when indemnity is based upon contract as opposed to quasi-contract, it may lie in the fact that an action based upon quasi-contract is practically, if not in fact, a tort. Chicago, Rock Island & Pacific Ry. Co. v. United States, supra; Gallant v. Waterman S. S. Corporation, supra; C. F. Harms Co. v. Erie R. Co., 2 Cir., 167 F.2d 562; Compare Brown & Root, Inc., v. United States, D.C.S.D.Tex., 92 F.Supp. 257, affirmed 5 Cir., 198 F.2d 138, wherein such an action was referred to as "ex contractu."

In the answers to the interrogatories the jury did not exactly demonstrate that it was guided by principle. It first decided that $30,000 was a reasonable compromise, and then had to leave the second interrogatory as to whether it was plainly erroneous, if not a reasonable compromise, unanswered. The jury then determined that $30,000 was not plainly erroneous as to amount (after failing to answer interrogatory No. 2 which should have preceded this answer by an affirmative response) but plainly erroneous as to liability. If the absence of liability was so plain, then why should payment have been made in the first place? The jury did not require instruction on this subject. The jury, after due deliberation, concluded that there was absolutely no liability on the shipowner's part, and still it thought that $30,000 was a reasonable payment for the shipowner to make to one to whom it owed no liability. The jury could conceivably have awarded a substantial sum of money on the original claim, if that had been left for its determination, rather than by the settlement negotiated by the parties, especially after the original plaintiff's attorney had made his summation. A jury that considers $30,000 as "nuisance value" favored the plaintiff.

Undoubtedly the shipowner's counsel, apparently a lawyer of long and substantial experience sensed this, from the demeanor and reaction of the jurors. Yet it is most unlikely that such a jury verdict could have been set aside or reversed. Cf. Ondato v. Standard Oil Co., 2 Cir., 210 F.2d 233; Dickerson v. Long Island R. Co., 266 App.Div. 852, 42 N.Y. S.2d 335, motion for leave to appeal denied 266 App.Div. 921, 44 N.Y.S.2d 344.

Shortly before completing its deliberations, the jury, as to the indemnity claim, inquired as to whether interrogatory B-4 referred to unseaworthiness on the morning of the accident or at the time of the accident. Thereupon both questions were submitted to the jury and the answers were in the negative. While this is not conclusive as to the jurors lack of due consideration, it is an indication of such when added, to other inconsistencies.

Another matter should be noted. In question B-3 the jurors were asked as to the nature of the stevedoring contractor's negligence, and they responded by the word "carelessness" which is not particularly enlightening.

The jurors should not be charged with the problems which may have arisen in

framing the interrogatories. The Court, in its discretion, prepared them. Skidmore v. Baltimore & O. R. Co., 2 Cir., 167 F.2d 54. The attorneys, while approving a special verdict, were not in agreement in its preparation. They might have been more helpful if they had acquiesced, as appears to be the object of Rule 49. Perhaps, under subdivision (b) of Rule 49 the jury could have been instructed to clarify the verdict, thus obviating the present difficulties. Yet when the jury submitted its answers, both sides seemed to claim victory, and further deliberation was not requested.

Furthermore, the general law on the subject, as well as the law applicable to this case, is complex and the jury could readily have been confused.

The shipowner based its indemnity claim against the time charterer upon the contractual basis of certain provisions in the time charter. The time charterer used other provisions for its benefit against the shipowner. The instrument itself is long and complex. If the time charter and the facts of the accident were similar to those in The Lewis Luckenbach, 2 Cir., 207 F. 66, the liability might be decided one way; if dissimilar, perhaps another. Counsel themselves admitted the paucity of law on this point. On a new trial, they may be in a position to present the matter more clearly and thoroughly.

The time charter also contains certain provisions as to the status of the ship's captain. The case of Logue Stevedoring Corp. v. The Dalzellance, 2 Cir., 198 F.2d 369 may have some bearing upon ultimate liability under the time charter in that regard.

The time charterer urges that it bears no responsibility to the stevedoring contractor, claiming that the latter was an independent contractor. Yet power to control the manner of performance of the work may produce responsibility. Gallagher v. United States Lines Co., 2 Cir., 206 F.2d 177. This might be a question for the jury.

In Newport News Shipbuilding & Drydock Co. v. United States, 4 Cir., 226 F.2d 137, the Court differentiated between the commercial guarantees of workmanship and materials and the tort guarantees against liability in a certain ship repair contract. Perhaps an analysis of the provisions of the time charter from these aspects on re-trial would help.

A clear and thorough presentation of the matters above referred to, on retrial, will aid both the Court and jury in their determinations.

The shipowner also claims contractual indemnity from the stevedoring contractor claiming that it is an intended beneficiary of certain provisions of a stevedoring contract with the consignee of the freight.

Such a contention would seem to be more logically made by the time charterer rather than the shipowner who was more in privity with the affreightment, but on retrial this issue could be developed more clearly. Cf. Tozar v. Philco Corporation, D.C.E.D.Pa., 130 F.Supp. 554, affirmed on opinion below, 3 Cir., 226 F.2d 959.

Finally, the shipowner claims common law indemnity of status, or indemnity implied in law, or quasi-contractual indemnity against the stevedoring contractor. If the United States Supreme Court extends its holding in Ryan Co. v. Pan-Atlantic Corp., supra, and agrees with the well established law of New York, Westchester Lighting Co. v. Westchester County Small Estates Corp., 278 N.Y. 175, 15 N.E.2d 567; McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 107 N.E.2d 463; Cf. also, Rich v. United States, 2 Cir., 177 F.2d 688, and permits such common law indemnity despite workmen's compensation insurance, allowing the legislature to rectify any inconsistencies (as the New York State legislature has done this year), then, depending on the jury's finding of the facts, the stevedoring contractor may be found liable. On retrial, a clearer development of what the law on this point is, or ought to be, would help the Court considerably, and help it to clarify matters or remove the subject from the

jury, once it has determined what such law is.

The shipowner has moved for various forms of relief, but in essence, it asks the Court to accept that which favors it and reject the unfavorable. A just determination cannot well be arrived at without a retrial of the entire indemnity issue.

In advance of the new trial, the attorneys for the parties involved should make every effort to stipulate facts and to agree upon matters of law.

 The motion for a new trial is granted. Settle order on five days notice.

### Special Verdict

#### (A)—Settlement With Plaintiff

1. Was the payment by the shipowner of $30,000 in settlement of plaintiff's claim a reasonable compromise under all of the testimony submitted to you on this trial? Yes

2. If no, was the payment plainly erroneous? (not answered)

3. If yes, was it plainly erroneous as to amount? No

As to liability? Yes

4. Is it possible that you would have found the shipowner liable?

For negligence? No For unseaworthiness? No

5. If answer to 4 is yes, what is the maximum you would have awarded plaintiff for his injuries? (not answered)

For negligence? For unseaworthiness?

#### (B)—Indemnity Claim

1. Were the agents, servants or employees of the stevedoring contractor negligent or careless in any way? Yes

2. If yes, was such negligence the primary and active cause of plaintiff's injuries? Yes

3. If yes, what was the nature of such negligence? Carelessness

4. (a) Was the ship or its equipment unseaworthy at 8:00 o'clock a. m. on October 27, 1955? No

(b) Was the ship or its equipment unseaworthy at the time of the accident? No

5. Was the shipowner negligent? No

6. If yes, what did that negligence consist of? (not answered)