Orville S. CARPENTER, Trustee,
Plaintiff,

v.

E. M. HALL, Jr., et al., Defendants.

C. A. No. 68–H–738.

United States District Court,
S. D. Texas,
Houston Division.

March 16, 1970.

Gene H. Bishop and William D. Breedlove.

Geary, Brice, Barron & Stahl (Michael E. Rohde), Dallas, Tex., for Goodkind & Co. and Ling & Co., Inc.

Sewell, Junell & Riggs (William A. Paddock), Houston, Tex., for Lewis E. Brazelton, III.

Vinson, Elkins, Searls & Connally (William R. Eckhardt, III), Houston, Tex., for David C. Bintliff, Brazos Valley Cotton Oil Co., Inc. and Jack G. Taylor.

DeLange, Hudspeth, Pitman & Katz (C. M. Hudspeth), Houston, Tex., for Bradley Collins.

Presley E. Werlein, Jr., Houston, Tex., for Ray Dusek, Sr.

Funderburk, Murray & Ramsey (John A. Murray), Houston, Tex., and Arvey, Hodes & Mantyband (J. J. Enright), Chicago, Ill., for John M. Pogue, Jr.

Anderson, Brown, Orn & Pressler (Richard F. Bergner), Houston, Tex., for Allen Will Harris and John D. Mackinnon.

Goldman & Levin (Solomon S. Goldman), New Orleans, La., for William P. Thompson.

Willbern & Marshall (Roy Willbern), Houston, Tex., for William Walt Strawther.

Charles D. Cottingham, Jr., and Ladin, Weycer & Schultz (William M. Schultz), Houston, Tex., for Joseph E. Petta and Lewis R. Petta.

Wilson, Pinedo & Hill (Frank M. Pinedo), and Foreman, Dyess, Prewett, Henderson & Cantey (Craig C. Cantey, Jr.), Houston, Tex., for Harris County Land & Cattle Co., Illinois Tupper Lake, Inc., J. D. Corp., Donald McGregor, Sr., and Tupper Lake Corp.

Fisher, Roch & Blackstock (Wayne Fisher), Houston, Tex., for Lester L. Lilley.

Reynolds, White, Allen & Cook (Grant Cook), Houston, Tex., for Ernest M. Hall, Jr.

Andrews, Kurth, Campbell & Jones (Raymond A. Cook, James W. Dilworth and Frederick M. Knapp, Jr.), Houston, Tex., for trustee.

Cox, Evans, Pakenham & Roady (Joyce Cox), Houston, Tex., for G. C. Haas & Co.

Harless, Bailey & Youngblood (Bill W. Bailey), Dallas, Tex., for Clarence Leon Lusk.

Coke & Coke (J. Edwin Fleming), Dallas, Tex., for First Nat. Bank in Dallas,

Liddell, Dawson, Sapp & Zivley (Walter P. Zivley), Houston, Tex., for Malcolm G. Baker, Jr.

Royston, Rayzor & Cook (E. D. Vickery), Houston, Tex., and Jones, Day, Cockley & Reavis (Frank C. Heath and Patrick F. McCartan), Cleveland, Ohio, for Ernst & Ernst, Newman T. Halvorson, Clarence T. Isensee and John F. Maurer.

Orgain, Bell & Tucker (J. Hoke Peacock, II), Beaumont, Tex., for Paine, Webber, Jackson & Curtis.

Dee, Foster & Bonds (E. P. Dee), Houston, Tex., for H. A. Sears.

William B. Dazey, Houston, Tex., for Richard E. Smythe.

Vinson, Elkins, Searls & Connally (John C. Snodgrass), Houston, Tex., for Business Funds, Inc., John F. Austin, Jr., Dukaine Corp., Kelty Inv. Co. and W. F. Keesler.

Baker, Heard & Elledge (Willis E. Gresham), Houston, Tex., for Edwin F. Gilbert.

Vinson, Elkins, Searls & Connally (Robert E. Morse, Jr.), Houston, Tex., for Kenneth W. Dusek.

Fulbright, Crooker, Freeman, Bates & Jaworski (B. J. Bradshaw and James C. Slaughter), Houston, Tex., for Bank of the Southwest Nat. Ass'n of Houston.

Dillingham & Schleider (Ben H. Schleider, Jr.), Houston, Tex., and Hubachek, Kelly, Rauch & Kirby (James T. Griffin), Chicago, Ill., for A. G. Becker & Co., Inc., and Daniel J. Good.

Dillingham & Schleider (Ben H. Schleider, Jr.) Houston, Tex., and Gardner, Carton, Douglas, Chilgren & Waud (John K. Notz, Jr.), Chicago, Ill., for Glore, Forgan, Wm. R. Staats, Inc.

Fulbright, Crooker, Freeman, Bates & Jaworski (Blake Tartt), Houston, Tex., for James C. Fourmy and Dittmar & Company.

Golden, Burrow, Potts & Boeckman (Duncan Boeckman), Dallas, Tex., for Weber, Hall, Cobb & Caudle, Inc.

Vinson, Elkins, Searls & Connally (Richard P. Keeton), Houston, Tex., for Arthur Belfer.

Hutcheson, Taliaferro & Grundy (Thad Grundy), Houston, Tex., for Chesley Pruet, Adams & Peck and Lloyd H. Smith.

Sewell, Junell & Riggs (Ben G. Sewell), Houston, Tex., for A. G. Edwards & Sons.

## MEMORANDUM OPINION

HANNAY, District Judge.

In this cause Orville S. Carpenter, Plaintiff as Trustee of Westec Corporation sues A. G. Becker & Co. Incorporated and some 92 other defendants.

Plaintiff alleges:

### NATURE OF CLAIM, JURISDICTION AND PARTIES

1. This action is brought to enforce liabilities created by the Securities Act of 1933 as amended and the Securities Exchange Act of 1934 as amended, the rules and regulations of the Securities and Exchange Commission and the Board of Governors of the Federal Reserve System promulgated thereunder, and the laws of the State of Texas. The amount in controversy exceeds ten thousand dollars ($10,000) exclusive of interest and costs. The jurisdiction of this Court is founded upon Section 22 of the Securities Act of 1933, Section 27 of the Securities Exchange Act of 1934, 28 U.S.C. § 1331, 28 U.S.C. § 1332, and the principles of pendent jurisdiction. Except where above expressly otherwise alleged, all purchases and sales of Western Stock are alleged to have been made, directly or indirectly, by the use of the mails or other means and instrumentalities of interstate commerce or the facilities of the American Stock Exchange.

2. This action is brought on behalf of Westec Corporation on behalf of (a) itself, (b) the Fraud Claimants Fund for Creditors Class Six as set forth in the Trustee's Amended Plan of Reorganization heretofore filed in Civil Action #

66–H–62 styled In the Matter of Westec Corporation, Debtor, a Proceeding for the Reorganization of a corporation now pending in this Court, and (c) as a class action for all persons who sustained a loss as a result of any purchase of or bona fide loan against the common stock of the aforesaid Debtor corporation between September 2, 1964 and August 25, 1966, or who otherwise were injured as a result of the unlawful practices, conduct and activities described herein or who were damaged as a consequence thereof who may appear herein and prove their claims as provided in Rule 23, Federal Rules of Civil Procedures, as amended.

3. With respect to the class action, Trustee alleges:

a. The persons constituting this class are so numerous and scattered geographically as to make it impossible or impracticable to bring them all before this Court.

b. The cost of developing and prosecuting any such claim is so much greater than the amount of the claim that it would be economically unfeasible for any claimant individually to prosecute his action.

c. Trustee has, pursuant to orders of this Court, conducted an extensive investigation into the matters herein complained of and is well prepared and qualified to prosecute all said claims.

d. Under the aforesaid Amended Plan of Reorganization, the liability, if any, of Westec for the acts complained of herein will be compromised and settled and, therefore, the interest of Trustee and Westec is not adverse to any potential claimant.

e. There are many common issues of law and fact applicable to all such potential claims.

f. Trustee would further show that Westec, as hereinafter more specifically alleged, was caused to purchase substantial blocks of stock with corporate funds in furtherance of the unlawful conspiracy, practices, conduct and activities described herein as a result of which it sustained substantial losses and is therefore a purchaser and a proper party to maintain this action under the Securities Act and the Securities Exchange Act as above alleged.

4. Unless some different basis of liability is specifically asserted with respect to any particular defendant herein, liability is predicated upon the proposition that each of such defendants acting alone or in concert with others initiated, joined in, became a member of or otherwise knowingly and/or negligently materially advanced, aided or abetted a continuing unlawful conspiracy to commit, directly or indirectly, the wrongs and illegal acts complained of herein. As such, each and all of said conspiratorial defendants are liable jointly and severally for all losses incurred or damages sustained as a result of said conspiracy or on account of any act, conduct or practice by any one or more of said Co-Conspirators in the furtherance or advancement of said conspiracy.

The Complaint consists of 32 long legal pages, which sets out in great detail the alleged improper and unlawful conduct of the 93 Defendants describing the specific acts of the particular Defendants on named dates and in definite ways. The amounts sought to be recovered against the particular Defendant in many instances would exceed $10,000.00 and court costs. The Complaint above-mentioned is herewith included by reference herein for fuller details and for all purposes.

After the filing of the above-mentioned Complaint counsel for all of the Defendants who are represented by attorneys entered into conferences with the attorneys for Plaintiff for the purpose of seeing if they could not decide on questions to be submitted to the Court for determination. As a result of these conferences, the attorneys for the Plaintiff and attorneys for the Defendants sub-

mitted to the Court the following questions:

1. Whether the Plaintiff Trustee states a claim on behalf of Westec Corporation, on behalf of (a) itself, or (b) the Fraud Claimants Fund for Creditors Class Six as set forth in the Trustee's Amended Plan of Reorganization heretofore filed in Civil Action No. 66–H–62, upon which relief may be granted? and

2. Whether the Plaintiff Trustee has standing to maintain a class action, as alleged in the Original Complaint, and if so, whether the action may be maintained as a class action pursuant to Rule 23, Fed.R.Civ.P.?

Taking up first the consideration of question 1, it is well to set out the sections that were allegedly violated by the Defendants. They are as follows:

1. Section 10(b), 15 U.S.C.A. Section 78j provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

Rule 10b–5, adopted by the Commission (17 C.F.R. § 240.10b–5), provides:

"It shall be unlawful for any person, directly or indirectly by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange

"(a) to employ any device, scheme or artifice to defraud,

"(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

"in connection with the purchase or sale of any security."

Defendants have argued in some 30 or more briefs what they contend are deficiencies in the Plaintiff's Complaint.

In the beginning it is necessary to keep in mind the following standards or guidelines:

(1) that for the purpose of these motions the allegations of Plaintiff's Complaint are taken as true. Stanton v. Larsh (5th Cir.), 239 F.2d 104, at 106;

(2) that the rule relating to this type of action should be given a liberal, rather than a restrictive, interpretation. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir.);

(3) where the effect of the ruling would in all probability end the litigation, the Court should not so act as to thus terminate the litigation without being perfectly clear that such action is fully warranted, (Eisen supra), and

(4) that Defendants' motion to dimiss for failure to state a claim upon which relief can be granted under Rule 12(b) of the Fed.R.Civ.P., should be treated as a motion for summary judgment, Condon v. Richardson, 411 F.2d 489, at 493 (7th Cir.). And in the same case Judge Hoffman held that where substantial doubt remains as to existence of one or more genuine issues of a material fact, the motion for summary judgment should be denied. See: Moutoux v. Gulling Auto Electric, Inc., 295 F.2d 573 (7th Cir. 1961). Also

Ferraioli v. Cantor, 281 F.Supp. 354 (S.D.N.Y.1967); and Entel v. Allen, 270 F.Supp. 60 (S.D.N.Y. 1967).

■ Considering now the main arguments of Defendants leveled at Plaintiff's claims that its Complaint does state a cause of action upon which relief may be had. As to the argument that any indemnity in favor of Westec would be against the public policy, Defendants say that this would be indemnity and indemnity would not lie in this case. This argument is not sound because Plaintiff claims he is entitled to bring this suit because under the above quoted Rule 10b–5 he says that he is entitled to assert those causes of action which initially were vested in the injured members of the general public but which, through operation of state principles of indemnity, have now become vested in the Trustee (Plaintiff) to the extent of amount or amounts to be paid or committed to be paid in compromise. Thus vested with a cause of action based upon damages suffered by others, Plaintiff in this action has standing to sue regardless of whether Westec itself was otherwise damaged as a proximate result of Defendants' unlawful conduct. Trustee also alleges substantial damage of Westec proximately resulting from the conduct of Defendants under the heading of "Effects of the Offenses" as follows:

"As a proximate result of the offenses hereinabove alleged, the corporation was brought to a sudden financial collapse. But for the acts complained of, Western would have prospered, substantially unaffected by fluctuations in the market price of its common stock. As a proximate result of the offenses charged, however, and particularly as a result of the aggravation of the unlawful transactions during the period May 1, 1966 to August 25, 1966, Western was suddenly deprived of its credit, of many of its customers and of many of its key employees, thereby being permanently injured in its business and being forced to undergo the expense of reorganization (and losses

from sales of important segments of its business) in order to survive at all. The amount of such damages can be fully determined only upon a trial of this cause, but on information and belief such damages are alleged to be many millions of dollars."

Plaintiff Trustee also claims that under the "purchaser-seller" test that he has plead a cause of action for the reason that the language of Section 10(b) of the Securities Exchange Act states that, "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

In the case of Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961), Chief Judge Brown speaking for the Fifth Circuit said concerning Rule 10b–5:

"In a substantive way it is even more sweeping. It greatly *expands* the protection frequently so hemmed in by the traditional concepts of common law misrepresentation and deceit, the requirement of privity, proof of specific damage, inadequacy of the right of rescission or right to recover up to par value of stock of a much greater market value." (Emphasis added.)

■ Defendants in their many briefs contend that indemnity in favor of Westec would be against public policy.

From a careful consideration of the decisions with reference thereto, I am of the clear opinion that this contention is without merit and so hold.

On the question of indemnity or contribution the Texas law is important. See: Brown & Root, Inc. v. United States, 92 F.Supp. 257, S.D.Tex., June 26, 1950, (affirmed 198 F.2d 138 (5th Cir., 1952)), in which Judge Connally states:

" * * * the common law of this State (Texas) long recognized the right of indemnity as existing in favor

of one who satisfies an obligation on which he was liable, but where the actual wrong, or the greater culpability rests on another. (92 F.Supp. 262.)"

As to the question of contribution, Defendants urge and rely upon Borg Warner Corporation v. White Motor Co., 344 F.2d 412 (5th Cir. 1965). This case is not a bar to recovery by the Plaintiff herein. I was one of the three judges on the panel of the Fifth Circuit that decided this case.

Coming now to the argument urged by the Defendants that the conduct of the Westec Corporation was "in pari delicto" with Defendants. In the case of Perma Life Mufflers, Inc., et al. v. International Parts Corp., et al., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982, decided by the Supreme Court of June 10, 1968, Mr. Justice Black in delivering the opinion of the Court wrote that the Latin phrase "in pari delicto" literally means "of *equal* fault." (Emphasis added.) On page 146 in the same case, on page 1988 of 88 S.Ct. Mr. Justice White in a concurring opinion said:

> "No simple formula can encompass the infinite variety of possible situations. Generally speaking, however, I would deny recovery where plaintiff and defendant bear substantially *equal* responsibility for injury resulting to one of them *but permit recovery in favor of the one less responsible where one is more responsible than the other.*" (Emphasis added.)

Under this rule the doctrine in pari delicto does not apply in this case. See also the above quoted statement of Judge Connally in the Brown & Root case.

The purchase-sale requirement must be interpreted so that the broad design of the Exchange Act, to prevent inequitable and unfair practices on securities exchanges and over-the-counter markets, and is not frustrated by the use of novel or atypical transactions. A. T. Brod & Co. v. Perlow, 375 F.2d 393, at 397 (2nd Cir.). "In determining who has standing to enforce duties created by statute, a court's quest must be for what will best accomplish the purposes of the legislature." Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 946 (2nd Cir. 1969).

To the same effect see: Securities and Exchange Comm. v. Guild Films Co., Inc., 279 F.2d 485 (2nd Cir. 1960), aff'g 178 F.Supp. 418 (S.D.N.Y.1959) cert. denied sub. nom. Santa Monica Bank v. Securities and Exchange Comm., 364 U. S. 819, 81 S.Ct. 52, 5 L.Ed.2d 49 (1960), wherein the Second Circuit held that the banks there had "purchased" the shares in question when they accepted such shares as collateral for a loan to the owner of the shares. See also: Mader v. Armel, 402 F.2d 158, at 159 (6th Cir. 1968), cert. denied Young v. Mader, 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459.

The contention of Defendants that Westec Corporation is not the kind of purchaser of its own securities to qualify under Rule 10b–5 is without merit. See: Hooper v. Mountain States Securities Corp., supra.

Another contention urged by Defendants is that Plaintiff's cause of action has been barred by one or more statutes of limitation. A complete and correct answer to this contention is set out in "Plaintiff's Reply Brief" on page 15 and 16, as follows:

> "6. *The argument that plaintiff's actions are barred by one or more statutes of limitations.*

Section 11(e) of the Bankruptcy Act [11 U.S.C.A. § 29(e)] provides in part as follows:

> 'A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy.'

The provisions of Section 11(e) apply to reorganizations under Chapter X of the Bankruptcy Act with the term "date of adjudication" being read as the date of the approval of the petition. 1 Collier on Bankruptcy 11.13, p. 1200 (14th ed. 1968).

The Westec Chapter X petition was filed on September 26, 1966, and the court entered its order of approval on September 27, 1966. The complaint in this action was filed on August 23, 1968. Therefore, since the complaint was filed within two years subsequent to the date of adjudication, no claim which had not already expired by September 27, 1966 is now barred by limitations.

For pendent claims under state law and for federal claims as to which there there is no special federal statute of limitations, the appropriate Texas statute of limitations will be "borrowed" by the federal court sitting in Texas. Cope v. Anderson, 381 U.S. 461 [67 S.Ct. 1340, 91 L.Ed. 1602] (1947). Thus a private action brought under Rule 10b–5 will be governed by the applicable Texas statute. Hendricks v. Flato Realty Investments, CCH Fed. Sec.–L.Rep. 92,290 (S.D.Tex. September 9, 1968).

From the above it will be seen that under the Texas two-year statute of limitations the plaintiff would be barred as to all causes of action accruing prior to September 27, 1964 except to the extent that the statute of limitations has been tolled. The federal rule with regard to tolling continues to be that as laid down by the Supreme Court in Bailey v. Glover, 21 Wall 342, 22 L.Ed. 636 (1875). In this early case the Supreme Court recognized that statutes of limitation should not be literally applied where there are contravening policies which make it unjust to do so.

'* * * Where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' (22 L.Ed. 636, 638.)

See also Exploration Co. v. United States, 247 U.S. 435 [38 S.Ct. 571, 62 L.Ed. 1200] (1918); Holmberg v. Armbrecht, 327 U.S. 392 [66 S.Ct. 582, 90 L.Ed. 743] (1946); and Hooper v. Mountain States Securities Corp., supra. By applying the federal tolling rule to the facts at hand it is patently obvious that the Rule 10b–5 causes were tolled both in favor of Westec Corporation and in favor of the class.*

As an addendum to the limitation argument one defendant says that the complaint is defective for failure to anticipate the affirmative defense by alleging the grounds (the Bankruptcy Act and tolling) why the cause of action was not barred, citing Chambliss v. Coca Cola Bottling Corp., 274 F. Supp. 401 (E.D.Tenn.1967). If that precedent has any validity, it is limited to the kind of statute there involved, the 1933 Act, which by a limitation period qualifies the created cause of action itself."

The case of Hensley v. Love, decided March 12, 1969 (no writ history) of District Judge Grooms, reported in 298 F. Supp. 698 (D.C.Ala.), is a concise and precise ruling on a similar motion as to the one here under consideration under the first question. This case and the cases therein cited are so much in point

---

* One defendant has argued that limitations may have barred the class even though Westec was not barred, but such argument erroneously assumes in advance of trial that the individual members of the class will be unable to prove tolling in the damage hearing. For the effects on "predominance" see Section C, pp. 23–24 of this Reply.

# 1108

that I consider it well to set forth the opinion in full:

" ORDER

GROOMS, District Judge.

This matter came on to be heard on various motions filed on behalf of defendant Robert E. Wilder and on behalf of all other defendants in this action, except Claude Shell, L. E. Cowling, R. L. Cowling, R. E. Cowling, Mrs. Strube, and the Cowling Family Trust. After hearing oral argument thereon, and being advised in the premises, the Court hereby orders, adjudges and decrees as follows:

1. The motion of defendant Wilder to dismiss is hereby denied.

2. The motions filed by the other defendants, with the exception of Shell and the Cowlings, to dismiss are based principally upon the argument that deceit is requisite to the maintenance of a Rule 10(b) 5 action, and that the complaint fails to allege sufficiently the requisite deceit, under the authority of O'Neill v. Maytag, 339 F. 2d 764, 767–768 (2d Cir. 1964), and Birnbaum v. Newport Steel Corp., 193 F.2d 461, 463–464 (2d Cir. 1952). However, in view of the reach of the decision in Securities & Exchange Commissions v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), construing 'fraud or deceit' as employed in the Investment Advisers Act of 1940, and the recent en banc decision of the United States Court of Appeals for the Second Circuit in Schoenbaum v. Firstbrook, 405 F.2d 215 (Dec. 30, 1968), the averments in the particular challenged are sufficient. See also, Ruckle v. Roto American Corp., 339 F.2d 24, 29 (2d Cir. 1964); Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960), cert. denied, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961).

3. Defendants' motions to dismiss are each denied and said defendants will answer the complaint within twenty days."

Among the cases above cited is the Schoenbaum v. Firstbrook case in which certiorari was denied by the Supreme Court of the United States in Manley v. Schoenbaum, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219.

■ From the above, it is this Court's opinion and decision that each and all of the Defendants' motions to dismiss because of failure to state a cause of action upon which recovery could be had are denied, and that the answer to the first question submitted to this Court for determination, to wit: whether the Plaintiff Trustee states a claim on behalf of Westec Corporation, on behalf of itself or the Fraud Claimants Fund for Creditors Class Six as set forth in the Trustee's Amended Plan of Reorganization heretofore filed in Civil Action No. 66–H–62, upon which relief may be granted is, yes.

Turning now to the second question, to wit: Whether the Plaintiff Trustee has standing to maintain a class action, as alleged in the Original Complaint, and, if so, whether the action may be maintained as a class action pursuant to Rule 23, Fed.R.Civ.P.?

Rule 23 is as follows:

" *Class Actions*

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

(c) *Determination by Order Whether Class Action to be maintained; Notice; Judgment; Actions Conducted Partially as Class Actions.*

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

(2) In any class action maintained under subdivision (b) (3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

(3) The judgment in an action maintained as a class action under subdivision (b) (1) or (b) (2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under subdivision (b) (3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c) (2) was directed, and who have not requested exclusion, whom the court finds to be members of the class.

(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

(d) *Orders in Conduct of Actions.* In the conduct of actions to which this rule applies, the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair

conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters. The orders may be combined with an order under Rule 16, and may be altered or amended as may be desirable from time to time.

(e) *Dismissal or Compromise.* A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. As Amended Feb. 28, 1966, eff. July 1, 1966."

This suit was filed August 23, 1966.

The Plaintiff Trustee in his briefs proposes that for the initial stages of this action, until the tortious conduct of Defendants have been proved, the class may be simply defined as follows:

" * * * all persons who sustained a loss as a result of any purchase of or bona fide loan against the common stock of the aforesaid Debtor corporation between September 2, 1964 and August 25, 1966, or who otherwise were injured as a result of the unlawful practices, conduct and activities described herein or who were damaged as a consequence thereof who may appear herein and prove their claims as provided in Rule 23, Federal Rules of Civil Procedures, as amended."

On the hearing herein testimony was introduced by the Plaintiff to show that the injured members of the investing public numbered 4,000 to 10,000 persons. And that such persons held 849,000 shares with the 1,981,000 shares which were registered to potential Class Six claimants suggests total claimants in this lawsuit could reach approximately 10,-000. Their losses average from $3,000 to $8,000. The total amount of losses could amount to many millions of dollars. That in addition to this action there are some 28 suits or more pending involving the alleged "fraud upon the market" in Westec stock during the period covered by the complaint; some of them class actions, but few plaintiffs are named. Some of the plaintiffs are also defendants in the instant complaint. In addition there are at least 5 other pending cases in other jurisdictions, some of which have been or will be transferred to this district. There has also been testified to at this hearing in this matter that notices mailed to the class would cost about $10,-000. And that prior to a damage hearing the Reorganization Trustee would be an acceptable representative for this class.

Rule 23, which has been set out in full, is divided into two parts: (a) the mandatory "prerequisites" to a class action, and (b) the discretionary findings. The four mandatory prerequisites are as follows:

(1) the class is so numerous that joinder of all members is *impracticable,*

(2) there are questions of law or fact *common* to the class,

(3) the claims of the plaintiff Trustee are *typical* of the claims of the class, and

(4) the plaintiff Trustee will fairly and adequately *protect* the interests of the class. (Emphasis added).

Each of these mandatory requirements will be separately discussed.

1. The class is so numerous that joinder of all members is impractic-

able. Wright, Class Actions, 47 F.R.D. 169, 172 (1969), wrote:

> "For the class to be large enough to permit a class suit, impossibility of joinder is *not* required. Extreme difficulty or impracticability of joinder is sufficient." (Emphasis added.)

The word "impracticability" has been defined in Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, at 913–914 (9th Cir.) as follows:

> "The classes involved are self-evidently large. It seems unlikely that defendants can successfully controvert plaintiffs' allegation that the expense and burden, to the parties and the court, of litigating each claim separately renders that course impractical, especially since ' "impracticability" does not mean "impossibility," but only the difficulty or inconvenience of joining all members of the class.' Advertising Specialty Nat. Ass'n v. FTC, 238 F.2d 108, 119 (1st Cir. 1956)."

In Hohmann v. Packard Instrument Company, 399 F.2d 711, at 715 (7th Cir.), the court stated:

> " '[Rule 23] * * * should be construed to permit a class suit where several persons jointly act to the injury of many persons so numerous that their voluntarily, unanimously joining in a suit is concededly improbable and impracticable.
>
> * * * * * *
>
> To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was to prevent.'

> "Professor Benjamin Kaplan, who was the Reporter of the Advisory Committee on Civil Rules, has voiced a similar view in a recent article. In discussing a situation which might dictate the rejection of a class action—

a situation not present here—he observed:

> 'The rule sets out a number of matters pertinent to the (b) (3) findings, and among them "the interest of members of the class in individually controlling the prosecution or defense of separate actions." This interest can be high where the stake of each member bulks large and his will and ability to take care of himself are strong; the interest may be no more than theoretic where the individual stake is so small as to make a separate action impracticable. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (1), 81 Harv.L.Rev. 356, 391 (1967).' "

It is perfectly clear to me and I hold that the members of the class are so numerous that the joinder of all members is impracticable. See: Dolgow v. Anderson, 43 F.R.D. 472, 492 (E.D.N.Y. 1968) and also Fischer v. Kletz, 41 F.R. D. 377, 384 (S.D.N.Y.1966).

2. There are questions of law or fact common to the class that is "fraud on the market"—meaning that in a variety of ways and over a span of time the defendants concurred in wrongfully causing the market price of Westec stock on the American Stock Exchange to be higher than it would have been without such tortious conduct. The complaint alleges: "The investing public, in reliance on the information released or encouraged by the conspirators and on the false appearance of active market interest, became victims of the scheme. Among the manipulative devices were the following: (a) earnings were misstated; (b) favorable corporate news was manufactured and planted in the rumor mill that flows through investment circles; (c) the market was 'churned' in order to create a false image of activity; (d) buyers were provided when there were none in order to support the stock at an artificial level; (e) buyers were

provided at strategic times in order to either start the stock moving upward or to keep it moving after it had started; (f) buyers were provided to dry up the offering side of the market so that any substantial bids would raise the price of the stock; and (g) other devices were employed as more specifically alleged hereinafter."

In the recent case Globus v. Law Research Service, Inc., 418 F.2d 1276, at 1285 (2nd Cir.), the court wrote:

"A single misstatement or omission in a prospectus or offering circular, although less dangerous than a drug, may leave those responsible liable to literally thousands of purchasers."

Then too, in Contract Buyers League v. F & F Investment, 48 F.R.D. 7, at 11 (D.C.Ill.), the court wrote:

" * * * Though considering all the facts of a particular case, the courts have often found that an allegation of *conspiracy* is sufficient to support an action under 23(b) (3). See, e. g., Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 556 (2nd Cir. 1968); State of Minnesota v. United States Steel Corporation, 44 F.R.D. 559, 570 (D.Minn. 1968); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 726 (N.D.Cal.1967). The factors to be taken into account under the word 'predominates' as used in the new Rule 23(b) (3) may, however, convince the court that a class action cannot properly be maintained in a particular case. See, e. g., School District of Philadelphia v. Harper & Row Publishers, Inc., 267 F.Supp. 100 [1001] (E.D.Pa.1967); D & A Motors, Inc. v. General Motors Corp., 19 F.R.D. 365 (S.D.N.Y.1956); United States v. E. I. Dupont De Nemours & Co., 13 F.R.D. 98 (N.D.Ill.1952).

"As the word 'predominate' is used in 23(b) (3), it essentially requires a determination of the utility of a class action for all alleged parties and the resolution of controversy. This is the clear import of the Advisory Committee's comment that '[i]t is only where this predominance exists that econ-omies can be achieved by means of the class-action device.' 39 F.R.D. at 103. Moreover, the Rule itself articulates broad indicia for this calculation in its provision that

'The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.' "

I further find in regard to the class action being superior to other available methods for the fair and efficient adjudication of this controversy that there has been no divergent interest shown by other members of this class and that none of the pending actions are as comprehensive as this case.

I have heretofore mentioned the separate cases and they are already transferred to this court and the possibility of some five more being so transferred. There are practical reasons that I agree for the desirability of concentrating the litigation of related Westec claims in this forum. This was recognized by Judge Weinfeld and the Second Circuit in their decisions to transfer thirteen actions to Houston. See Schneider v. Sears, 265 F. Supp. 257 (S.D.N.Y.1967), and Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir. 1968), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968).

■ Regarding the desirability of litigating the present action in this forum. That would be so because otherwise there would be duplication of efforts by attorneys, judges and the parties. Second, it would preclude inconsistent rulings. And third, the principal office of Westec is here in Houston. Next, I have been presiding over the reorganization of Westec and know the problems involved

therein. Next, because the records and the witnesses as well as most of the attorneys are located here in Houston.

As to the difficulties likely to be encountered in the management of this class action, I will say that I have full confidence in the Plaintiff Trustee and his counsel in being able through their ability and experience in this type of litigation to proceed in a speedy and efficient manner in the handling of this class action. I will mention both the Trustee and his counsel later on in this Memorandum.

I have presided over the reorganization since the day it was filed in my Court and hope to continue to do so until all matters pertaining thereto have been concluded.

 It is my considered opinion that the complaint sufficiently alleges common questions of law and of fact affecting the several rights of the claimants required by Rule 23(a) (3). Also, I find that the Plaintiff's claims are common to the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Eisen, supra: Dolgow, supra.

 Should it be decided by the Court after a conference hereinafter mentioned that the causes of actions should be divided into sub-classes, and that separate trials be had thereon, then such procedure will be followed.

3. Now to the third mandatory requirement, to wit: that the claims of the Plaintiff Trustee are typical of the claims of the classes. Since the question in issue is whether the complaint failed to state a claim against *any* Defendant, the pleadings of the Plaintiff are amply sufficient to comply with this requirement. See: Green v. Wolf Corporation, 406 F.2d 291 (2nd Cir. 1968) cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L. Ed.2d 766.

"These claims have been described as follows:

'Trustee for himself (independently of the class action) assets two distinct causes of action, either of which is sufficient to sustain his standing to sue, (a) an action for restitution for amounts which in the reorganization proceedings he was forced to pay to compromise fraud claimants against Westec—in other words, a cause of action by subrogation or other equitable assignment which puts the Trustee in the shoes of the defrauded members of the general public; and (b) an action for compensatory damages by reason of injuries suffered by Westec itself. (Memorandum in Support of Plaintiff's Claims § IV, p. 11.)'

"The indemnity claim traces explicit allegations to § 161 of the complaint, which alleged damages in part as follows:

'As a proximate result of the offenses alleged, and in order to effectuate an orderly reorganization, plaintiff has been reasonably required to commit assets of Westec in compromise of claims asserted against it by reason of the wrongful conduct of its agents and employees; and *by aiding and exploiting such wrongful conduct of Westec's agents and employees the defendants have become liable to indemnify Westec from and against all losses and expenses so committed.* (Emphasis added.)'"

In this connection, in 47 F.R.D. 171, under the title Class Action, Charles Alan Wright wrote as follows:

"The requirement in Rule 23(a) (3) that the claims or defenses of the representatives must be *typical* of those of the class is probably no more than a cryptic way of saying that the representative must not have interests that conflict with those he purports to represent. Mersay v. First Republic Corp. of America, D.C.N.Y.1968, 43 F.R.D. 465, 468". (Emphasis added).

However, I believe that the usually accepted word meaning "typical" is that it "conforms to a type" is probably sim-

pler. However, under either definition, I am of the opinion and so hold that the pleadings of the Plaintiff herein are amply sufficient to comply with this third requirement and that neither the Trustee nor his counsel have any interest in conflict with those persons to whom they purport to represent.

■■■ 4. Concerning now the fourth and last mandatory prerequisite, to wit: Whether the Plaintiff Trustee will fairly and adequately protect the interests of the class. It is fundamental that adequacy of representation is essential and the representative must not hold interest that conflict with those of the class that he seeks to represent. In the much quoted Eisen v. Carlisle & Jacquelin, supra, the Court propounded the following question and then proceeded to answer it:

"What are the ingredients that enable one to be termed 'an adequate representative of the class?' To be sure, an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class. See Hansberry v. Lee, 311 U.S. 32, 61 S. Ct. 115, 85 L.Ed. 22 (1940)."

By the Plaintiff's attorneys being experienced is meant that he or they are experienced in the type of litigation involved in this cause. Here no attempt has been made in the many briefs filed by Defendants' to cast any doubt upon the splendid qualifications of the Plaintiff's counsel. They are members of one of the largest law firms in Houston and probably the second oldest local firm. My personal experience over the years with this firm, and particularly the last three years with reference to the Westec matters, leads me to the clear and positive opinion that they are in every way qualified to represent the Plaintiff herein.

With reference to the adequacy of representation is an essential mandatory requirement of the Trustee and his counsel, that they are able, well qualified, conscientious, zealous, have an undivided interest in the success of the law suit, and experience in this type of litigation with no adverse or conflicts of interest either between Trustee or his counsel and the class they represent. Both the Trustee and his counsel are men of integrity and in every way splendidly qualified to represent the class they purport to represent. Additionally, they are men of determination and are in excellent health.

The Trustee is a highly qualified executive and is an expert accountant and a licensed attorney. His services in this case have been excellent to the point of being magnificient. Immediately after his appointment, it was necessary for him to arrange bank loans of several million dollars within a short period of time and if he had been unable to do so, Westec in all probability would have immediately gone into ordinary bankruptcy resulting in a complete loss to the stockholders and a considerable loss to the creditors. With the splendid aid from his financial advisor, his counsel and his many employees, he was able to do an excellent job of reorganizing Westec and obtaining Westec's readmission to the American Stock Exchange several years in advance of the most hopeful predictions. To say that the Trustee's services were outstanding is indeed putting it mildly.

In this connection, it is my deliberate opinion that I could not have chosen a better Trustee to handle this trusteeship.

Another test that the Plaintiff has successfully met in this case is that he has shown a substantial possibility of prevailing after "putting up a real fight." See Dolgow v. Anderson, supra.

I also find that neither the Trustee nor his attorneys are involved in any interest that is in any way antagonistic to that of the class they represent.

I therefore conclude with reference to the fourth mandatory prerequisite that the Plaintiff Trustee and his counsel will fairly and adequately protect the interests of the entire class.

Having found that F.R.Civ.P. 23(a) which specifies four mandatory prerequisites of a class action have been fully satisfied in this case, I now turn to Rule 23(b) (3) pertaining to the discretionary requirements. They are:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

I am of the opinion that to some extent all four of these requirements have been covered in prior discussions in this Memorandum Opinion; however, I will further find specifically that (A) the interest of the members of the class in individually controlling the prosecution of this action has not been shown.

(B) I further find the extent and nature of the litigation concerning the controversy by the members of the class has already been set out.

(C) The desirability or undesirability of concentrating litigation of the claims in this particular forum has been fully dealt with and the practical reasons for the desirability of concentrating litigation relating to Westec claims in this forum have been fully shown by first, showing that it would avoid duplicate efforts by the Plaintiff, attorneys and parties. Second, it would preclude inconsistent rulings. Third, the principal office of the corporation is in Houston, Texas where the reorganization took place and the judge who presided over the reorganization will presumably preside over the class action hearing. Fourth, practically all the records available to Plaintiff Trustee are located here in Houston, Texas.

(D) Concerning the problem of the case management. Since the filing of the Chapter X proceedings more than three years ago, I have had many occasions to evaluate the character and ability of both the Plaintiff Trustee and his counsel. I unhesitatingly hold that they can and will properly manage this litigation and are calculated to efficiently take care of same, and that same will be handled diligently, thoroughly and competently.

I direct that proper legal notice be given as required by law.

I am quite sure that the Plaintiff in seeking to maintain this class action under F.R.Civ.P. 23(b) (3) has met all of the standards necessary in a more than adequate way. In fact, I believe beyond any question that a class action is the only practical method of litigating the issues when the complex nature of the litigation and the members of the comparatively small individual financial interests are considered. It has been suggested that the requirement of "typicality" means only that the Plaintiff not have interest in conflict with those of the class. See Mersay v. First Republic Corporation of America, 43 F.R.D. 465 (S.D.N.Y.1968); 2 W. Barron & Holtzoff, Federal Practice & Procedure § 562 n. 3 (Supp.1968).

Although it is repetitious, I again hold that Plaintiff Trustee's interests are not in any manner adverse to or in conflict with members of the class.

I further again hold that the common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Additionally, I find that this class action is manageable, that the notice to be given to the class sought to be represented herein by the Plaintiff Trustee is the best and *most practicable* one possible.

In conclusion, it is hereby determined that a class action under Rule 23 would achieve both the mandatory and discretionary objectives enumerated in the Notes of the Advisory Committee namely:

" * * * economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." (39 F.R.D. 73, 102–103 (1966).)"

I have made it perfectly plain that I am absolutely sure that the demonstrated character and abilities and all of the other qualities heretofore mentioned of the Plaintiff Trustee and his counsel are ample insurance that proper management of the class action and proper prosecution thereof will be had.

I therefore hold that the answer to the second question is, yes.

I further find that the objections of Amended Rule 23 will be fully satisfied and that (a) the class as defined will be protected, (b) that the legitimate interests of the Defendants will not have been prejudiced, and (c) that the only way the securities laws can be effectively enforced against the alleged wrongs is through the maintenance of this as a class action.

I therefore hold that all motions of Defendants heretofore filed in this case objecting to the maintenance of this suit contending that it was not such a case in which the Plaintiff has stated a claim or cause of action upon which recovery could be had, are denied. I further find that all Defendants' objections to the maintenance of the class action by Plaintiff are likewise denied.

The Court directs Plaintiff to prepare a form of notice which will fulfill the requirements of Rule 23(c) (2) and to submit such form to the Court for its approval.

I further direct that there be a meeting of the Plaintiff's attorneys and Defendants' committee or of any other Defendants' attorneys that care to attend at 10 a. m. on June 1, 1970, in my courtroom here in Houston, Texas, to determine, among other things, the setting of the case for trial and whether or not the case should be divided into subclasses with split or separate trials, and if so, the order of proceedings in the trial of same and any other questions that this Court may consider pertinent or proper.

The Clerk will notify all counsel.